**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **JAMES B. BERRY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO 07-0374-KD-B** |
| ) | |
| **GREGORY L. SMITH, JR., et al,** ) | |
| ) | |
| **Defendants.** ) | |

**<u>ORDER</u>**

This matter is before the court on the defendants' motion to dismiss Count 32 of the

amended complaint for "Declaratory Judgment of Non-Infringement" (docs. 104,105),

defendants' motion to dismiss the individual defendants as to Count 32 (docs. 48, 104, 105) and

plaintiff's motion for summary judgment on Count 32 (doc. 123).  Upon consideration of the

pleadings and for the reasons set forth herein, defendants' motion to dismiss Count 32 is

**DENIED,** defendants' motion to dismiss the individual defendants as to Count 32 is

**GRANTED** as to defendants Gregory L. Smith, Jr., Jerry B. Pittman, Randal M. Jacobs and Ellis

V. Ollinger, IV, and plaintiff's motion for summary judgment as to Count 32 is **DENIED**.

I.    <u>Background</u>

During his employment with the Flowerwood defendants and Plant Development

Services, Inc. (PDSI), plaintiff James B. Berry was, respectively, the production manager and the

general manager.  Flowerwood, Inc. is in the business of developing plants, the growing of

plants and the sale of plants.   PDSI is in the business of developing new plants, obtaining patent

protection for such plants, and licensing others under its patents.   Berry is no longer employed

with Flowerwood or PDSI.   Berry brings Count 32 of his amended complaint seeking a

declaratory judgment that the thirty-one plant patents owned by PDSI or PDSI and defendant Robert E. Lee are invalid and unenforceable and therefore cannot be infringed should Berry propagate and sell the plants at J. Berry Nursery in Grand Saline, Texas.

II.     Defendants' motion to dismiss Count 32

Defendants argue that Count 32 should be dismissed because Berry lacks standing and there is no legitimate case and controversy before the court.  Specifically, defendants point out that Berry testified that he is not currently selling or propagating the plants and has plead that his business J. Berry Nursery may propagate and sell the plants in the future but is not currently doing so; therefore, there is no presently justiciable controversy.[1]  Defendants point out that PDSI and Robert E. Lee would not have standing to bring an action for infringement against Berry until after he sold or propagated the plants.[2]

_____

[1] Defendants also point to Berry's deposition testimony wherein he states that he is not presently growing or selling the plants subject to the patents in Counts 1 through 31.

[2]  Defendants also argue that Berry is not the real party in interest, the real party being J. Berry Nursery, and therefore, Berry, individually, lacks standing to bring this claim.  The defendants do not allege that J. Berry Nursery is a corporation or any other legal entity.  The court can only presume from the lack of a legal designation after the business name that J. Berry Nursery is a sole proprietorship.  As such J. Berry Nursery and its owner Berry are generally considered to be single entity.  See Carolina Cas. Ins. Co. v. Williams, 945 So.2d 1030, 1040 (Ala. 2006); ("Under Alabama law, Williams Trucking, a sole proprietorship, is considered the same legal entity as Williams, the individual. Therefore, Williams is deemed to own the 1984 Mack dump truck titled in the name of his sole proprietorship."); Clardy v. Sanders, 551 So.2d 1057, 1059 -1060 (Ala. 1989) ("Clardy the individual and Clardy Realty, a sole proprietorship, are but a single legal entity; and the two separate capacities (Clardy as an individual, and Clardy as a sole proprietor) can not be separated into two legal entities for the purpose of testing Clardy Realty, Inc.'s liability as a successor in interest to the liabilities of Clardy's estate.").  The same is true under Texas law.  Ideal Lease Service, Inc. v. Amoco Production Co., 662 S.W.2d 951, 952 (Tex. 1983) ("At the time of the accident, Thompson was the owner and operator of a sole proprietorship known as Blue Streak Welding Service.... Blue Streak Welding Service was, in law and in fact, one and the same as Thompson because a sole proprietorship has a legal existence only in the identity of the sole proprietor."); see CU Lloyd's of Texas v. Hatfield, 126

2

Berry argues that he has standing as inventor or co-inventor and his "standing can grow from his professional reputation as well as an ownership interest in a patent on a plant for which he is an inventor." (doc. 123). Berry also alleges that a case and controversy exists because after he was fired he received a letter from PDSI dated February 20, 2006 wherein he was threatened with an infringement action if he "appropriated, used or attempted to patent plant technologies [both patented and non-patented] developed during the time of Berry's employment" including the patents listed in Counts 1 through 31 (doc. 94). In sum, Berry argues that forbearing the propagation and sale of the plants which he has a legal right to do, is the act which creates his standing and the case and controversy and thus declaratory judgment jurisdiction exists for this court to declare the patents invalid and unenforceable.

The court finds that Berry has met his burden that this court has declaratory judgment jurisdiction over this case. See Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 96, 113 S. Ct. 1967 (1993). In Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 227 S.Ct. 764, 771 (2007), the Supreme Court held

> Our decisions have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." [Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-241, 57 S. Ct. 461 (1937)]. In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties

---

S.W.3d 679, 684 (Tex. App. 2004) ("Under Texas law, a sole proprietorship has no separate legal existence apart from the sole proprietor.").

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

Id. at 771.[3]  In MedImmune, the Supreme Court found that the patent licensee MedImmune need not breach the license agreement with Genentech by not paying royalties on a disputed patent before seeking declaratory judgment as to patent validity.  MedImmune received a letter from Genentech stating that royalties were due under a licensing agreement for a drug patented by Genentech.  Although, MedImmune disputed the validity and enforceability of the patent, it continued to make the royalty payments to Genentech.  The Supreme Court found that although Supreme Court jurisprudence was rare, lower federal courts had "long accepted jurisdiction" in cases where a "plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement of a private party . . .".  Id. at 773.

Although the letter from PDSI to Berry was sent prior to formation of J. Berry Nursery and does not specifically threaten litigation, it does confirm that PDSI will not sit upon its right to protect its patents should Berry sell or propagate the patented plants.[4]  In other words, in order for a justiciable case or controversy to exist, Berry need not first sell or propagate the plants subject to the disputed patents.  His forbearance of such action and his evidenced intent to do so,

---

[3] In MedImmune, the Court found that the Federal Circuit's "reasonable apprehension of suit" test and its evolved form, the "reasonable apprehension of imminent suit" test conflicted with earlier Supreme Court decisions.  MedImmune, 127 S. Ct. at 775 at n.11.

[4] The letter states, inter alia, as follows" "Please accept this as formal notice to you that the appropriation, patenting, theft, use, sale, and or development of PDSI plant technologies by you is not permitted, including but not limited to the foregoing, as such technology is the sole property of PDSI. . . .  Please do no appropriate, use, sell, or attempt to patent plant technologies developed during the course of your employment. . . .  In the event that you wish to license from PDSI any plant technologies, patented or not, PDSI would entertain a license agreement with you. . . .  Such an arrangement would also assume that there is no litigation between us." (Exhibit G, doc.106-2.).

4

if the patents are invalid and unenforceable, is sufficient.  Berry's dilemma, that he is put to the choice "between abandoning his rights [to the patents] or risking prosecution - is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" MedImmune, 127 S.Ct. at 773 (citation omitted).  Accordingly, accepting the facts alleged as true and construing all reasonable inferences therefrom in the light most favorable to Berry as the court must do on a motion to dismiss, see Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff"), defendants' motion to dismiss Count 32 is **DENIED**.

III.    Motion to dismiss as to the individual defendants Ellis V. Ollinger, III,  Randal
        M. Jacobs, Gregory L. Smith, Jr, and Jerry B. Pittman,

In Count 32 as plead, Berry raises no claim against defendant Ollinger individually. Berry merely pleads that Ollinger signed a letter after Berry was fired "as representative of PDSI, Inc."  Therefore, because Berry has failed to state a claim against Ollinger, defendants' motion to dismiss defendant Ollinger as to Count 32 is granted.  This appears to be the sole remaining count which could be construed to raise a claim against Ollinger, thus he is dismissed with prejudice from this case.[5]

The Liriope plant in Count 16 was patented by Jacobs.  However, facts have not been plead in Count 32 which support a claim against Jacobs individually for the invalidation of the

---

[5]  In the order on defendants' motion for summary judgment, any claim for state law negligence as to Ollinger was dismissed as abandoned (Count 34) (doc. 149, n.9), summary judgment was granted in favor Ollinger as to the state law fraud claim (Count 33) (doc. 149, n.6), and Ollinger was dismissed as an individual defendant for Counts 1-31 because there is no evidence that he has an economic interest in the patents (doc. 149).

patent.  In Count 32 Berry alleges fraud regarding Lee, but there is no allegation that Lee

participated in the patent application process involving the Liriope plant.  Moreover, PDSI is the

owner of the Liriope patent.  Therefore, defendants' motion to dismiss defendant Jacobs as to

Count 32 is GRANTED.  This appears to be the sole remaining count which could be construed

to raise a claim against Jacobs, thus he is dismissed with prejudice from this case.[6]

In Count 32 as plead, Berry raises no claim against defendant Pittman individually.  In

his motion, Berry argues that Pittman is guilty of inequitable conduct before the Patent Office.

However, in Count 32 of the amended complaint, Berry does not plead Pittman's conduct as a

basis for the court to declare the patents invalid and unenforceable.  Berry plead that Lee

committed a fraud on the Patent Office and that Lee and PDSI failed to inform the Patent Office

of the prior sale, but he does not raise any allegation as to Pittman.  Berry cannot amend Count

32 of his amended complaint by raising claims against Pittman for the first time in a motion for

summary judgment.[7]  Price v. M & H Valve Co., 177 Fed.Appx. 1, 11 n.8, (11th Cir. 2006)

citing Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) and

"explaining that the liberal pleading standard under Fed.R.Civ.P. 8(a)(2) does not afford

plaintiffs with an opportunity to raise new claims at summary judgment."  Therefore, defendants'

---

[6] In the order on defendants' motion for summary judgment, any claim for state law negligence as to Jacobs was dismissed as abandoned (Count 34) (doc. 149, n.9), summary judgment was granted in favor of all defendants as to the state law fraud claim (Count 33), and Jacobs was dismissed as an individual defendant for Counts 1-31 because there is no evidence that he has an economic interest in the patents (doc. 149).

[7] In Count 32, Berry incorporates paragraphs 1 through 141 "as fully set out herein". (doc. 94).  However, this incorporation is inadequate to give any of the defendants notice that Pittman's allegedly "unauthorized" conduct would be asserted as a basis to invalidate the patents or render them unenforceable.

motion to dismiss defendant Pittman as to Count 32 is GRANTED.

In Count 32 as plead, Berry raises no claim against defendant Smith individually.  As with Pittman, in his motion Berry argues that Smith participated in the inequitable conduct before the Patent Office such that the patents should be held invalid and unenforceable. However, in Count 32 of the amended complaint, Berry does not plead Smith's conduct as a basis for the court to declare the patents invalid and unenforceable.  Again, Berry plead that Lee committed a fraud on the Patent Office and that Lee and PDSI failed to inform the Patent Office of the prior sale, but he does not raise any allegation as to Smith.  Berry cannot amend Count 32 of his amended complaint by raising claims against Smith for the first time in a motion for summary judgment.  Price, 177 Fed. Appx. at 11 n.8 (citations omitted).  Therefore, defendants' motion to dismiss defendant Smith as to Count 32 is GRANTED.

IV.   Summary judgment as to Count 32 against Lee and PDSI

In Count 32, Berry raises three specific allegations as the bases for invalidation or rendering the patents unenforceable.  First, Berry claims that the patents are invalid because a sale of the plants occurred more than one year before filing the patent applications.  Second, Berry claims that the patents are invalid because the inventor named on the patent is incorrect. Third, Berry claims that the patents are "unenforceable for fraud on the Patent Office because [Robert E.] Lee falsely claimed inventorship and Lee and PDSI failed to inform the Patent Office of the prior sale of the plants."

As an initial consideration, Berry also argues on motion for summary judgment that Pittman's inequitable conduct before the Patent Office is a basis for finding that the patents are invalid and unenforceable.  Specifically Berry states "[t]he plants selected under the supervision

7

of Berry for patenting were submitted for patenting by application prepared by Jerry Pittman.
The descriptions in the applications are not truthful, do not describe the true occurrences of the
development of the plants, do not acknowledge the prior sale of the plants prior to the
application, were prepared and submitted contrary to the USPTO regulations by an unauthorized
person, and were part of a fraud on the public and the USPTO.  Due to this inequitable conduct,
the patents are not due to be enforced and are due to be invalidated." (doc. 124)   To the extent
that Berry argues that the patents are invalid or unenforceable because Pittman was an
unauthorized person, this claim is beyond the scope of Count 32, and will not be considered by
the court for purposes of summary judgment or at the trial on the merits.  As discussed before,
Berry cannot amend his complaint through arguments of Pittman's inequitable conduct raised for
the first time in a motion for summary judgment. Price, 177 Fed.Appx. at 11 n.8.[8]

   A.   Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(c). The party seeking summary judgment bears "the initial burden to show the district court,
by reference to materials on file, that there are no genuine issues of material fact that should be
decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). Once the
moving party has satisfied its responsibility, the burden then shifts to the nonmovant to show the
existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a
sufficient showing on an essential element of her case with respect to which she has the burden

--------

[8]  See Fn. 7.

of proof, 'the moving party is entitled to summary judgment." Id. quoting Celotex Corp., v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 999 (11th Cir. 1992) cert denied, 507 U.S. 911, 113 S.Ct. 1259 (1993) (internal citations and quotations omitted).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for  summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dept. of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004) cert denied, 543 U.S.1081, 125 S.Ct. 869 (2005).

        B.   Patent invalid because of prior sale of plants

        Berry claims that the patents are invalid because of a prior sale greater than one year before the patent applications were submitted, i.e. the "on sale bar" to a valid patent.  35 U.S.C. § 102(b) provides in pertinent part that "[a] person shall be entitled to a patent unless...the invention was...on sale in this country, more than one year prior to the date of the application for patent in the United States."  Berry states that defendant Lee sold one plant to Dale Meriwether, which was then sold to Flowerwood prior to 1993.  Moreover, Berry claims that all the other plants were sold by Lee to Flowerwood in 1993.  Berry relies on invoices paid to Lee as proof that Lee sold his plants more than one year prior to filing the patent application.  Berry then

argues that because the plants were sold in a patentable state[9] more than one year before the first patent applications in 1996, the patents cannot be infringed because they fall under the "on sale bar".

Defendants respond that there are genuine issues of material facts in dispute such that Berry's motion for summary judgment should be denied.  Defendants argue that there was no sale of plants to Flowerwood because by agreement Lee retained ownership and control of his plants and the invoices referenced by Berry were for costs of shipping and materials.  In support, defendants point to the testimony of Smith and Lee that it was their agreement that Lee retain ownership of the plants when the plants were transferred to Flowerwood.  Defendants also point out that Berry has taken inconsistent factual positions because alleging that the plants were sold to Flowerwood in a patentable state is contrary to Berry's allegation that he invented/co-invented the plants and should be named as inventor on the patents.

The "on sale" bar prohibits a public use of an invention more than one year before the filing date of the patent application.  For the bar to apply, the product must be in a patentable state - "a completed invention in public, without confidentiality restrictions, and without permitted experimentation"  Honeywell Intern. Inc. v. Universal Avionics Systems Corp., 488 F.3d 982, 999 (Fed. Cir. 2007).  "In applying the statutory on-sale bar, this court follows the test set forth in [Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 67, 119 S.Ct. 304 (1998).]  The Pfaff test requires that (1) the invention be the subject of a commercial sale or offer for sale and (2) the invention be "ready for patenting" at the time of the offer or sale. Id.  An accused infringer may

---

[9] The court is not sure what evidence Berry relies upon to establish that the plants were in a patentable state.

10

overcome a patent's presumption of validity by presenting clear and convincing evidence that the patented device was on-sale before the critical date.  A defendant must prove that both prongs of the test occurred before the critical date." <u>Honeywell</u>, 488 F.3d at 997.

The court agrees that there are genuine issues of material fact in dispute which preclude summary judgment on this issue.  Specifically, there is a factual dispute over whether the plants were sold to Flowerwood; whether the plants were sold in a patentable state to Flowerwood, and if so whether this sale invalidates the patents.

C.      <u>Inequitable conduct and incorrect inventor named</u>

As to inequitable conduct before the patent office, Berry argues that Lee and PDSI's failure to disclose the prior sale constitutes a fraud on the Patent Office.  Berry also argues that Lee and PDSI committed fraud on the Patent Office because Lee falsely claimed inventorship.

> In order to establish inequitable conduct, the party challenging the patent is required to establish by clear and convincing evidence that the patent applicant "(1) either made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the U.S. Patent and Trademark Office." <u>Symantec Corp. v. Computer Assoc. Int'l, Inc</u>, 522 F.3d 1279, 1296 (Fed.Cir.2008) (quoting <u>Cargill, Inc. v. Canbra Foods, Ltd.</u>, 476 F.3d 1359, 1363 (Fed.Cir.2007)).  Both intent and materiality are questions of fact, and must be proven by clear and convincing evidence. <u>Young v. Lumenis, Inc.</u>, 492 F.3d 1336, 1344 (Fed.Cir.2007). We review a district court's findings on the threshold issues of materiality and intent for clear error. <u>Pfizer, Inc. v. Teva Pharms. USA, Inc.</u>, 518 F.3d 1353, 1366 (Fed.Cir.2008). Under the clear error standard, the court's findings will not be overturned in the absence of a "definite and firm conviction" that a mistake has been made. <u>Id</u>. "Once threshold findings of materiality and intent are established, the district court must weigh them to determine whether the equities warrant a conclusion that inequitable conduct occurred." <u>Flex-Rest, LLC v. Steelcase, Inc.</u>, 455 F.3d 1351, 1363 (Fed.Cir.2006) ( quoting <u>Purdue Pharma</u>, 438 F.3d at 1128).

<u>Scanner Technologies Corp. v. ICOS Vision Systems Corp. N.V.</u>, 528 F.3d 1365, 1374 (Fed. Cir. 2008).

Defendants respond that there are genuine issues of material facts in dispute such that Berry's motion for summary judgment should be denied.   The court agrees.  Specifically, factual disputes at issue include whether Berry was the inventor, whether Lee was the inventor, whether there was any intent to defraud the Patent Office[10], and as discussed *supra,* whether the plants were sold in a patentable state more than one year prior to the patent applications being filed.

VIII.   <u>Conclusion</u>

For the reasons set forth herein, the court finds that Berry has standing to pursue Count 32.  Moreover, the court finds that genuine issues of material fact exist such that Berry's motion for summary judgment is due to be denied as to Count 32.


**DONE** and **ORDERED** this the 6th day of August, 2008.


 **s / Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[10] Berry contends, as proof that PDSI engaged in inequitable conduct by falsely naming Lee as the inventor in the patent applications, that Berry perpetuated a false marketing story that Lee was the inventor.  Berry fails to adequately explain how <u>his participation</u> in the alleged marketing ploy to the public constitutes inequitable conduct before the USPTO in obtaining the patent.